# Wheeling.

ROBERT M. SIMS *et al. vs.* THE BANK OF CHARLESTON, *et al.*

January Term, 1869.

1. The only authority for the foreign attachment in equity is given in the 11th section of chapter 151, Code 1860. But, unless the plaintiff's claim be an equitable claim, the only remedy by attachment in equity authorized by this section is a suit and proceeding against a non resident debtor.

2. An attachment in equity cannot be sustained under the 2d section of chapter 151, Code 1860, against an absconding debtor, where it appears that the claim was purely a legal one and ought to have been enforced in a court of law.

3. An endorsement of the object of the suit on a summons in equity, founded on an affidavit as to the non residence of some of the parties who are to be summoned as garnishees, which said endorsement is not directed to the sheriff, or any one else, and which does not require the sheriff to attach the estate of the defendant or to perform any other act in the premises, and which does not run in the name of the State as required by the constitution, has none of the essentials of a valid attachment.

4. Affidavits are stated which are held to be insufficient.

The matter in controversy in this cause arose between creditors of the Bank of Charleston, located in Kanawha county. In 1861 the bank was removed by its officers to Lynchburg, Virginia. In September, 1865, Robert M. Sims made the following affidavit before the clerk of the circuit court of Kanawha county, viz:

" *West Virginia, Kanawha county, to wit:*

" This day Robert M. Sims personally appeared before me, and made oath that the Bank of Charleston is justly indebted to him in the sum of 1,620 dollars and 08 cents, with legal interest on 541 dollars and 29 cents, from the 27th of February, 1861, and like interest on 631 dollars and 26 cents from the 12th of May, 1861, and like interest on 441 dollars

and 53 cents from the 25th of July, 1861.   That the Bank of Charleston has removed and is removing its estate and effects from the State of West Virginia, so that process of execution on a judgment in said suit, when it is obtained will be unavailing; that Henry Fitzhugh and the Dabney Salt Company are non residents of the State of West Virginia.   That he is informed and believes that the said Henry Fitzhugh, who was president of the Bank of Charleston, has the legal title, in himself, to a valuable tract of land near Ravenswood, in the county of Jackson, which he holds in secret trust for said bank, and that one Park is now in possession of the said real estate for said Fitzhugh; that he does not know the given name of the said Park.

Teste.:                    JNO. SLACK, Clerk."

He also took out a summons in chancery in Kanawha county against the defendants named in the affidavit, on which was endorsed the following :

"The object of this suit is to subject to sale a valuable tract of land near Ravenswood, in the county of Jackson, the property of the Bank of Charleston, but deeded to Henry Fitzhugh for purposes of trust, to satisfy a debt of 1,620 dollars and 08 cents, with interest due from the Bank of Charleston to the plaintiff, and the costs, and also to subject the rents in the hands of the said Park, and to attach the said lands and rents for the purposes aforesaid, in the hands of said Park, and to restrain the said Fitzhugh, and the said bank, from selling and conveying away said tract of land.

Teste :                    JOHN SLACK, Clerk."

He also took out a summons directed to the sheriff of Jackson county, in like form, and with a like endorsement as the summons in Kanawha county.   He took an order of publication against Fitzhugh and the Dabney Salt Company as non residents.

The summons to Jackson county was returned with the following endorsement by the sheriff: "I, this day, by virtue of the within attachment levied the same upon 175 dol-

lars in the hands of Robert Park, and also upon 1,025 acres of land charged on the commissioner's books of Jackson county, West Virginia, dated November 14th, 1865."

At March rules, 1866, the complainant filed his bill setting forth his claim, which consisted of the proceeds of certain notes collected by the bank belonging to complainant, and alleging that the bank was established by law at Charleston, and was, in 1861, carried by the president, who was a non resident, to eastern Virginia, whence it was taken in 1863 to Europe. It further alleged that the land in Jackson county was held for the bank in secret trust to Fitzhugh, the president; that Park was the agent for the sale of it and had some funds derived from rents and sales. It prayed that Fitzhugh and Park be restrained from further sales, and that the land be sold by order of the court to satisfy complainant's debts. By leave, other parties, the firm of Kuhn & Co., were made defendants and another attachment was issued against the effects due the bank in their hands.

James Ruffner also brought suit in chancery, in Kanawha county, on the 28th day of. March, 1865, against the Bank of Charleston, as a non resident debtor, for certain deposits amounting to 2,250 dollars, and sued out a summons against it and the Kanawha Cannel Coal Mining and Oil Manufacturing Company, seeking effects in the hands of the latter due the bank. As this affidavit, order of attachment and return in the case was not considered here, but only the same process in relation to the land in Jackson county, it is not necessary to introduce them. But the affidavit on which the order of attachment was predicated, and which appears to be the only one made by Ruffner, none appearing in the record as having been made after the filing of the supplemental bill, is as follows:

"The complainant, James Ruffner, this day made oath before me, John Slack, clerk of the circuit court for said county, that the defendant, the Bank of Charleston, is indebted to him in the sum of 2,250 dollars with legal interest on 1,000 dollars, part thereof, from the 21st day of March, 1860,

until paid, and like interest on 1,250 dollars residue thereof, from the 2d day of May, 1861, until paid, and that the said claim is just, and that there is present cause of action therefor, and that the assets of said bank have been removed by Henry Fitzhugh, president of said bank, beyond the limits of this State, and that the president is a non resident of this State, having such assets in his possession, and having conveyed them out of this State, and that he verily believes the said bank has assets in Kanawha county, where the said suit is pending, in the shape of debts due from sundry persons to the said bank, and perhaps otherwise."

By a supplemental bill filed in February, 1866, the complainant alleged the property of the bank, held by Fitzhugh in trust, in the land in Jackson county, and took out process against the bank, Fitzhugh and Park.

The summons to Jackson county was endorsed as follows:

"The sheriff is hereby required to attach the estate, debts, and effects of the within named defendant, the Bank of Charleston, in the county of Jackson, or that may be in the hands of Robert Park, due, or to become due, and particularly a tract of land in said county, near the town of Ravenswood, in the occupancy and control of the said Park, as agent, or tenant, of said Fitzhugh, or Bank of Charleston, and so to secure the same that said property, debts, or effects, shall be forthcoming, and subject to the future order of the court, in the within named cause, to satisfy the complainants' claim of 2,250 dollars, with interest on 1,000 dollars, part thereof, from the 21st March, 1860, until paid, and like interest on 1,250 dollars, other part thereof, from the 2d day of May, 1861, and costs."

The return was as follows:

"RETURN,—Executed on Robert Park, April 16th, 1866, by delivering him an office copy of the within, and attached in his hands, as agent for Henry Fitzhugh, two hundred and twenty-eight dollars, and also levied upon 1,320 acres of land, lying on Pond creek, Grant township, Jackson county,

West Virginia, conveyed by A. K. and W. P. Frost to Henry Fitzhugh, on the 8th day of January, 1851, and recorded in deed book No. 8, page 286, in said county, this 16th day of April, 1866.

Wm. Harrold, Dep.,

For G. Sinking, S. J. C."

At the December term, 1867, James H. Rogers and Leonora C. Rogers filed their separate petitions in the circuit court of Kanawha county, alleging that they had instituted suits against the bank and some others as garnishees in Jackson county, in 1865, and had levied attachments on the land on the 1st day of January, 1866, for certain sums of money due them, and that by an order of the circuit court of Jackson county their causes had been transferred to the circuit court of Kanawha. It further alleged that they had obtained judgments at law against the bank in Jackson county, in April, 1867, and that writs.of *fieri facias* had been returned "no property found." The petitioners prayed that the four cases might be heard together and all questions of priority of liens be thus determined. The endorsement on the summons in both these latter original cases were in form and substance the same as in Sims' case, as was also the return of the levy by the sheriff, except in the latter cases the land was accurately described, as the evidence taken in the cause showed, it being in fact land conveyed to Fitzhugh by Eaton and wife, and Moore and wife, for the use of the bank, and known as the "Key's tract," on Pond creek. There did not appear to be any affidavit to warrant an attachment in these latter cases, and the only affidavits appearing in the record were in relation to the non residence of some of the defendants upon which orders of publication were had.

The court below decreed that the judgments of the Rogers', had in April, 1867, had priority over the claims of the other parties and ordered a sale of the land in Jackson county to satisfy their judgment lien. It also decreed that the attachment of Sims was not properly sued out or served so as to operate as a lien, and that Ruffner's attachment was

not levied or served upon the land in controversy, but upon another and different tract.

Sims, and Ruffner's administrator, appealed to this court.

*George H. Lee* for the appellees.

BERKSHIRE, J.  Sims and Ruffner, the attaching creditors, who claim priority of lien on the land in controversy by virtue of their respective attachments, each instituted suits in equity against the bank of Charleston and others in the circuit court of Kanawha county.

The controversy is between them and James H. and Leonora C. Rogers, who obtained separate judgments against said bank and filed their separate petitions in these suits, setting up their judgment liens against the land in controversy and claiming priority of lien over the said attachments on account of their not having been levied on the land in dispute, and also because of their insufficiency.

1.  As to the attachment of Sims.

. He sued out what is claimed to be an attachment under the second section of the attachment law, Code of 1860, chap. 151, p. 645, and proceeded against the Bank of Charleston (his debtor) not as a non resident, but as an absconding debtor who was removing his estate and effects out of this State.  His suit, however, is in the nature of a foreign attachment.

The only authority for the foreign attachment is given in the eleventh section of the chapter just cited.   But unless the plaintiff's claim be an equitable claim, the only remedy by attachment in equity authorized by this section is in a suit and proceedings against a non resident debtor.   It is not claimed in this case, however, that the Bank of Charleston, the debtor, is a non resident of this State, nor is there anything in the record to show it.   But on the contrary, it is insisted here that the attachment issued under the second section of the attachment law before cited, and ought on that account to be sustained.   Neither is it pretended that

the claim or debt is an equitable claim. On the contrary, it distinctly appears that it was purely legal and could and ought to have been enforced and recovered in a proceeding at law.

It necessarily follows, therefore, as it appears to me, that there was no authority to issue an attachment in this case, and as a consequence there could have been no valid lien, even if what is claimed to be an attachment in this case had been sufficient in form and substance, and properly levied. But, so far as the record discloses, I think no valid attachment did in fact issue. The paper claimed to be such, under which the lien on the real estate it is claimed was created, certainly cannot be sustained as an attachment. It is only a copy of the endorsement stating the object of the suit upon which the affidavit as to the non residence of some of the parties, who were to be summoned as garnishees, was founded. It is simply copied and endorsed by the clerk on the *alias* summons which was directed to the sheriff of Jackson county; but it has none of the essentials of a valid attachment. It does not run in the name of the State of West Virginia as required by the constitution. It is not directed to the sheriff of Jackson county (where the land in controversy is situated), or any one else. Nor is the sheriff, or any other person, requested or required to attach the estate of the debtor or to perform any other act or do anything in the premises whatever. And, moreover, it does not seem to have been founded on any sufficient affidavit; nor to have been levied on the land in controversy. In my judgment, therefore, it was clearly a nullity and no lien could be created under it.

2. As to the case of Ruffner:

In his bill he alleges that the Bank of Charleston is a non resident debtor; but the attachment or order of attachment on which he relies does not appear to have ever been levied on the land in controversy or the land described in the bill. And, besides, I think it is fatally defective because it does not run in the name of the State as required, nor is it founded on any sufficient affidavit as required by the statute.

For these reasons I think it was invalid and that no lien was or could be created by it.

The decree must be affirmed with costs and damages.

Judges Brown and Maxwell concurred in affirming the decree of the court below, on the ground that the affidavits on which the attachments were sued out were insufficient in all the cases, and Judge Maxwell thought the attachments were themselves bad except in the case of Ruffner.

DECREE AFFIRMED.